UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MAZZA, individually, and as representative of a Class of Participants and Beneficiaries of the Pactiv Evergreen Services Inc. Employee Savings Plan,

    Plaintiff,

v.

PACTIV EVERGREEN SERVICES INC., et al.

    Defendants

Case No: 1:22-cv-5052

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ..................................................................................................................... 1
STANDARD OF REVIEW ....................................................................................................... 8
ARGUMENT .............................................................................................................................. 9
   I.   PLAINTIFF HAS PLAUSIBLY PLED A BREACH OF DUTY OF PRUDENCE CLAIM UNDER ERISA BASED ON EXCESSIVE RKA FEES…………………………………………………………………………..9

   II.  PLAINTIFF HAS STATED A CLAIM FOR BREACH OF THE DUTY TO MONITOR……………………………………………………………...15
CONCLUSION ........................................................................................................................ 15
CERTIFICATE OF SERVICE .............................................................................................. 16

# TABLE OF AUTHORITIES

<u>Cases</u>

*Albert v. Oshkosh Corp. et al.*,
  47 F.4d 570 (7th Cir. 2022), *reh'g denied*,
  2022 WL 4372363 (7th Cir. Sept. 21, 2022) ..........................................................................passim

*Allen v. GreatBanc Trust Co.*,
  835 F.3d 670 (7th Cir. 2016)............................................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................... 2, 9

*Baumeister v. Exelon Corp.*,
  2022 WL 4477916 (N.D. Ill. Sept. 22, 2022).................................................................... 1

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007 ......................................................................................................... 2, 9

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009)............................................................................................. 8

*Brown-Davis v. Walgreen Co.*,
  2020 WL 8921399 (N.D. Ill. Mar. 16, 2020) .................................................................15

*Coyer et al. v. Univar Solutions USA Inc. et al.*,
  2022 WL 4534791 (N.D. Ill. Sept. 28, 2022)..........................................................passim

*Davis v. Magna Int'l of Am., Inc.*,
  2021 WL 1212579 (E.D. Mich. Mar. 31, 2021)..............................................................15

*Divane v. Northwestern Univ.*,
  953 F. 980 (7th Cir. 2020)........................................................................................ 11, 12

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014).......................................................................................................3, 7

*Forman v. TriHealth, Inc.*,
  40 F.4th 443 (6th Cir. 2022)...........................................................................................3

*George v. Kraft Foods Glob., Inc.*,
  641 F.3d 786 (7th Cir. 2011).........................................................................................12

*Glick v. ThedaCare Inc.*,
  2022 WL 16927749 (E.D. Wisc. Oct. 27, 2022), *report and rec'd adopted
  by* 2022 WL 16924188 (E.D. Wisc. Nov. 14, 2022)………………………………………..7

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) .................................................................................................. 15

*Hughes v. Northwestern Univ.*,
  142 S. Ct. 737 (2022) ................................................................................................................ 3

*Indep. Trust Corp. Corp. v. Stewart Info. Servs. Corp.*,
  665 F.3d 930 (7th Cir. 2012) .................................................................................................. 14

*Lafreniere v. RR Donnelley & Sons, Inc., et al.*,
  Case No. 1:20-cv-07158, Dkt. No. 27 (N.D. Ill. Jan. 3, 2022)……………………………passim

*Meiners v. Wells Fargo & Company*,
  898 F.3d 820 (8th Cir. 2018) .................................................................................................... 9

*Ramos v. Banner Health*,
  461 F. Supp. 3d 1067 (D. Colo. 2020) ................................................................................... 12

*Smith v. CommonSpirit Health,*
  37 F.4th 1160 (6th Cir. 2022) ............................................................................................. 3, 7

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) .................................................................................................... 9

*Sweda v. Univ. of Pennsylvania*,
  923 F.3d 320 (3d Cir. 2019) ................................................................................................... 10

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
  947 F.3d 464 (7th Cir. 2020) .................................................................................................... 9

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015) ..................................................................................................... 2, 3, 15

*Tierney v. Vahle*,
  304 F.3d 734 (7th Cir. 2002) ..........................................................................................……..6

STATUTES

29 U.S.C. § 1104(a)(1)(B) ............................................................................................................ 3

OTHER AUTHORITIES

Secretary of Labor's Circuit Rule 54 Statement as *Amicus Curiae*, *Divane v. Northwestern University*, No. 18-2569 (Dkt. 49) (Mar. 31, 2022) ................................ 11

RULES

Rule 8(a)(2) .................................................................................................................................. 8

**INTRODUCTION**

This is a straightforward case alleging that Defendants breached the fiduciary duty of prudence under ERISA by allowing the Pactiv Evergreen Services Inc. Employee Savings Plan ("Pactiv Plan") to pay excessive recordkeeping and administrative ("RKA") fees to the plan recordkeeper, Principal Life Insurance Company ("Principal"), and other Plan service providers. *See Plaintiff's Amended Complaint* (ECF No. 8), ¶¶ 5-13.

As Judge Norgle recently recognized in *Lafreniere v. RR Donnelley & Sons, Inc., et al.*, Case No. 1:20-cv-07158, Dkt. No. 27, at *2 (N.D. Ill. Jan. 3, 2022), with regard to a materially similar motion to dismiss determination in an ERISA fees case, Plaintiffs here "allege not only that the retirement plan service fees were unreasonably high in comparison to the fees allegedly paid by similarly sized plans for the same level of services but also that those unreasonably high fees are the result of a deficient process in a selecting a retirement plan service provider." *Id.* (emphasis added). In that materially similar scenario, the court in *Lafreniere* found plaintiffs stated a plausible claim. *Id.* at 4. A year after *Lafreniere*, the applicable law and similar facts now lead to the same conclusion: Plaintiff's Amended Complaint states plausible claims under the relevant United States Supreme Court and Seventh Circuit precedent under *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022); *Tibble v. Edison Int'l*, 575 U.S. 523 (2015); and *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022), *reh'g denied*, 2022 WL 4372363 (7th Cir. Sept. 21, 2022).[1]

Under *Hughes*, the express pleading standard for ERISA duty of prudence claims is whether plaintiff has "plausibly alleged a violation of the duty of prudence as articulated in *Tibble*, applying the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v.*

---

[1] *Baumeister v. Exelon Corp.*, 2022 WL 4477916 at *2 (N.D. Ill. Sept. 22, 2022), which was dismissed without prejudice, is consistent with the denial of the motion to dismiss in this case. There, the court faulted plaintiffs for "plead[ing] no facts to show whether the selected comparators receive recordkeeping services of a similar nature and quality to those offered by the Plan's recordkeeper." *Id.* at *2. However, and as explained in detail below, the Amended Complaint here has these exact necessary allegations that were missing in *Baumeister*.

1

*Twombly*, 550 U.S. 544 (2007)." *Hughes*, 142 S. Ct. at 742. The U.S. Supreme Court explained in *Tibble* that "'a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Hughes*, 142 S. Ct. at 741 (quoting *Tibble*, 575 U.S. at 530)." Even in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." *Id.* at 742 (citing *Tibble*, 575 U.S. at 529-30). The Court in *Hughes* concluded by stating that "[i]f the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Id.* Thus, under *Hughes*, plaintiffs state a claim if they plausibly allege that the fiduciaries failed to remove an imprudent investment (which includes services providers and their RKA fees) from the plan within a reasonable time.

This is the exact type of claim that Plaintiff has pled in his Amended Complaint: he alleges that Defendants "breached the duty of prudence they owed to the Plan by requiring the Plan to "'pay[] excessive recordkeeping fees, *Hughes*,142 S. Ct. at 739-740, and by failing to timely remove their high-cost recordkeeper, Principal Life Insurance Company ('Principal')." ECF No. 8, ¶ 6. Plaintiff's Amended Complaint provides numerous facts, derived from Pactiv Plan documents, secondary sources, and from comparator plans that serve as "meaningful benchmarks," from which the Court is able to reasonably infer that Defendants did not regularly monitor Plan fees and services and did not remove its imprudent recordkeeper, Principal, as required under *Hughes* and *Tibble*.

Since *Hughes*, the Seventh Circuit in *Albert*, 47 F.4d 570, has further clarified what plaintiffs must allege to make out a plausible ERISA duty of prudence claim. Starting from the premise that "29 U.S.C. § 1104(a)(1)(B) requires plan fiduciaries to act prudently when managing an employee benefit plan," *Albert*, 47 F.4d at 578, the Seventh Circuit continued "that an ERISA plaintiff fail[s] to state a duty of prudence claim where the complaint 'fail[s] to allege that the [recordkeeping] fees were excessive relative to the services rendered." *Id.* at 580 (citing *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022); *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022)). That being

2

said, the Seventh Circuit "emphasize[d] that recordkeeping claims in a future case could survive the 'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss," *Albert*, 47 F.4d at 580 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)), by alleging that recordkeeping fees were excessive relative to the service rendered.

Plaintiff has done exactly that through voluminous and detailed factual allegations in his Amended Complaint. More specifically, Plaintiff alleges the following with regard to the RKA fees being excessive relative to the services rendered:

1. "There is a group of national retirement plan services providers commonly and generically referred to as 'recordkeepers,' that have developed bundled service offerings that can meet all the needs of mega retirement plans with same level and caliber of services. Principal is one such recordkeeper." (ECF No. 8, ¶ 38);

2. "For mega plans, like the Pactiv Evergreen Plan, any minor variations in the level and quality of Bundled RKA services described above and provided by recordkeepers has little to no material impact on the fees charged by recordkeepers." (*Id.*, ¶ 42);

3. "Since at least 2016, industry experts have maintained that for mega retirement plans like the Pactiv Plan, prudent fiduciaries treat Bundled RKA services as a commodity with little variation in price. "Custody and recordkeeping are 'commodity' services. Like any commodity, given equal quality, the key benchmark for these services is price. The cheaper you can find competent custody and recordkeeping services, the better for participants." Eric Droblyen, *Evaluating 401(k) Providers: Separating Commodity from Value-Added Services*, https://www.employeefiduciary.com/blog/evaluating-401k-providers-separating-commodity-value-added-services (Feb. 10, 2015)." (*Id.*, ¶ 43);

4. "Industry experts know that recordkeeping services have become a commodity for retirement plan fiduciaries; virtually every major recordkeeper provide the same core services. See,

3

e.g., Allen Steinberg, *Unchecked Revenue: Show Me the Fees*, https://blog.retireaware.com/2018/01/12/unchecked-revenue/ (last visited Sep. 15, 2022); Fred Barstein, Investment News, *Potential Pru Retirement Sale a Cautionary Tale of a 401(k) Innovator*, https://www.investmentnews.com/prudential-retirement-sale-cautionary-tale-innovatio-205453 (Apr. 20, 2021) ("It is no wonder, but certainly disappointing, that one of the industry's most innovative providers, Prudential Retirement, is reportedly exploring a sale. That highlights how much record keeping has become a commodity focused on scale and costs.") (*Id.,* ¶ 44);[2]

5. "Another top recordkeeper, Fidelity, has admitted that the RKA services that it provides to mega Plans are commodified, including to its own Plan for its own employees." (*Id.,* ¶ 45);

6. "As part of stipulated facts in another case, it stated: 'The value of the recordkeeping services that Fidelity provided to the Plan in 2014 was $21 per participant; the value of the recordkeeping services that Fidelity provided to the Plan in 2015 and 2016 was $17 per participant, per year, and the value of the recordkeeping services that Fidelity has provided to the Plan since January 1, 2017 is $14 per participant, per year. *Had the Plan been a third-party plan that negotiated a fixed fee for recordkeeping services at arm's length with Fidelity it could have obtained recordkeeping services for these amounts during these periods. The Plan did not receive any broader or more valuable recordkeeping services from Fidelity than the services received by any other Fidelity-recordkept plan with at least $1 billion in assets during the Class Period (November 18, 2014 to the present).*' See *Moitoso v. FMR LLC, et al.*, 1:18-CV-12122-WGY, Stipulation of Facts, Dkt. 128-67, at 4-5 (D. Mass. Sep. 6, 2019) (emphasis added)." (*Id.,* ¶ 46);

---

[2] Defendants spend much time in their memorandum of law disputing whether the quality and level of services provided by 401(k) are commodified as asserted in the Amended Complaint or whether they vary in different ways when it comes to level and quality. *See, e.g.,* Defendants' Memorandum of Law ("ECF No. 17"), at 2. It is axiomatic that such factual disputes are not ripe for decision on a motion for dismiss.

4

      7.    "All recordkeepers quote fees for the Bundled RKA services on a per participant basis without regard for any individual differences in services requested, which are treated by the recordkeepers as immaterial because they are inconsequential from a cost perspective to the delivery of the Bundled RKA services." (*Id.,* ¶ 47);

      8.    "Because dozens of recordkeepers can provide the complete suite of required RKA services, plan fiduciaries can ensure that the services offered by each specific recordkeeper are apples-to-apples comparisons." (*Id.,* ¶ 48); and

      9.    "The Pactiv Evergreen Plan had a standard level of Bundled RKA services, providing recordkeeping and administrative services of a nearly identical level and quality to other recordkeepers who also serviced mega plans during the Class Period." (*Id.,* ¶ 52).

The final allegation - that the Pactiv Plan had a standard package of Bundled RKA services of a nearly identical level and quality to other recordkeepers who service mega plans – is based on additional non-conclusory facts derived from Plan documents:

      1.    "There is nothing disclosed in the Participant section 404(a)(5) fee and service disclosure documents that suggests that the annual administrative fee charged to participants included any services that were unusual or above and beyond the standard recordkeeping and administrative services provided by all national recordkeepers to mega plans with more than $500,000,000 in assets." (*Id.,* ¶ 53);

      2.    "Recordkeepers often collect a portion of the total expense ratio fee of the mutual fund in exchange for providing services that would otherwise have to be provided by the mutual fund. These fees are known as "revenue sharing" or "indirect compensation." (*Id.,* ¶ 57);

      3.    "The Pactiv Evergreen Plan paid revenue sharing to Principal, as disclosed on the Plan's Form 5500 forms during the Class Period." (*Id.,* ¶ 58);

      4.    "The fees were excessive relative to the level and quality of recordkeeping services

received since the same level and quality of services are generally offered to mega plans, like the Pactiv Evergreen Plan, regardless of the number of services selected by the Plan and regardless of the specific service codes utilized by the plan on the Form 5500. *See* Droblyen, *supra*; Steinberg, *supra*; Barstein, *supra*." (*Id.,* ¶ 63);

5. "Defendants could have received recordkeeping services during the Class Period of the same level and quality from Principal or other recordkeepers that provide recordkeeping services to mega plan, like the Pactiv Evergreen plan, because both the Plan 5500 forms and Plan fee disclosures to participants establish that the Plan received no services that were materially different than the services received by all the comparable plans in the chart above. There is no evidence, based on these Plan documents, that the plan received any additional services." (Id., ¶ 92); and

6. "The Plan Bundled RK&A fees were also excessive relative to the services received, since the quality and level of such services are commodified for mega 401(k) plans like this Plan and are provided on an 'all-you-can-eat-basis,' based primarily on the number of participants a plan has. Any difference in Bundled RK&A fees between comparable plans is not explained by the level and quality of services each recordkeeper provides. *See* Droblyen, *supra*; Steinberg, *supra*; Barstein, *supra*." (*Id.,* ¶ 100).

Additionally, the Employee Savings Plan ERISA 404 Retirement Plan and Investment Information Documents (i.e., the Section 404(a)(5) Plan participant fee disclosures for 2016-2021), which Defendants attached to their memorandum of law in support of this motion, ECF 17, Exs. A-F, also establish independently the accuracy of Plaintiff's allegations which regard to the relationship between the RKA services received from Principal and fees paid by the Pactiv Plan participants.[3] For instance, all these documents have the exact same language that states that, "[p]lan administrative

---

[3] Plaintiff agrees with Defendants, ECF No. 17, at 3 n.4, that "[o]n a Rule 12(b)(6) motion, the Court may consider the Plan's 404(a)(5) fee disclosures under ERISA, which were referred to in the Complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)."

expenses *typically* include items such as recordkeeping, participant website access, participant statements, Plan compliance services and financial professional services." *See e.g., id.* Ex. A, at 2 (emphasis added). Both the use of the word "typically," in these documents, and the fact that these Plan RKA services include many of the same ones listed in Plaintiff's Amended Complaint, ECF No. 8, ¶ 40, establishes that the Pactiv Plan received the same standard RKA services as the comparator plans listed in the Amended Complaint, and a like-to-like comparison has been accomplished. *Id.*, ¶ 81.

Thus, contrary to Defendants' repeated and unsupported assertions, *Albert* does not involve "similar claims" to this case. *See, e.g.,* ECF No. 17, at 2, 9. In fact, none of these fifteen (15) allegations quoted above are in the *Albert* complaint which is part of the reason why the *Albert* complaint was dismissed for failing to state a claim under the pleading standard articulated there.[4]

Here, Plaintiff has the necessary factual allegations regarding RKA fees being excessive relative to the services rendered which "provide 'the kind of context that . . . move[s] this claim from possibility to plausibility' under *Twombly* and *Iqbal*." *Albert*, 47 F. 4th at 580 (quoting *Smith*, 37 F.4th at 1169). Consequently, taking Plaintiff's factual allegations as true at the pleading stage, as the Court must, Plaintiff's allegations are that Defendants violated their fiduciary duties by selecting and then retaining an "unreasonable" recordkeeper, Principal, and paying other Plan service providers excessive fees given the market that existed contextually at the time of that these services were selected. *See Dudenhoeffer*, 573 U.S. at 425. Plaintiffs have thus plausibly alleged a breach of the fiduciary duty of prudence with regard to his RKA fee claim. *Accord Coyer et al. v. Univar Solutions USA Inc. et al.*, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022) (based on materially identical allegations, and after

---

[4] Because *Glick v. ThedaCare Inc.*, 2022 WL 16927749, at *3 (E.D. Wisc. Oct. 27, 2022), *report and rec'd adopted by* 2022 WL 16924188 (E.D. Wisc. Nov. 14, 2022) had similar allegations to *Albert*, it was dismissed without prejudice. Plaintiff has recently filed in that case a Second Amended Complaint with RKA allegations similar to the ones in this case. *See Glick*, Case No. 1:20-cv-01236-WCG, ECF No. 47 (E.D. Wis. Dec. 14, 2022).

applying *Albert*, finding that plaintiffs had stated plausible excessive recordkeeping claims).

Even though Plaintiff does not cite to any itemized list of services from an administrative service agreement between Principal and Pactiv showing that the Pactiv Plan paid more for the same specific services as sixteen (16) similarly-sized comparator plans, ECF No. 8, ¶ 81, 100, no such allegations are necessary at this stage of the litigation. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 602 (8th Cir. 2009) ("[W]e note that Braden could not possibly show at this stage in the litigation that the revenue sharing payments were unreasonable in proportion to the services rendered because the trust agreement between Wal–Mart and Merrill Lynch required the amounts of the payments to be kept secret. It would be perverse to require plaintiffs bringing [ERISA] claims to plead facts that remain in the sole control of the parties who stand accused of wrongdoing.") (emphasis added). Instead, the law in this Circuit is long-established that a claim alleging a breach of fiduciary duty is made out if the court, based on circumstantial factual allegations, can reasonably "infer from what is alleged that the process was flawed." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016). Moreover, "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Id.*[5]

Because Plaintiff has sufficiently provided the context to show plausible claims for relief, Defendants' motion to dismiss Plaintiff's Amended Complaint should be denied in its entirety.

## STANDARD OF REVIEW

Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[5] Indeed, because it is "implausible that any would-be defendant would voluntarily turn over confidential financial information of that kind without the protections of the discovery process, the Seventh Circuit in *Allen* "decline[d] to add a pre-pleading requirement that plaintiffs ask nicely for information they need—but cannot compel access to—before filing their complaint." *Allen*, 835 F.3d at 677.

8

plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In assessing a motion to dismiss under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *See Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). It is not the Court's role to decide between competing, plausible explanations for Defendants' conduct. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[I]t is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.")

## ARGUMENT

Plaintiff's Amended Complaint states plausible claims for relief based on specific, detailed, and non-conclusory factual allegations, as shown above. On the other hand, Defendants' motion to dismiss, and supporting memorandum of law, glosses over many of the pertinent facts, creates factual disputes that cannot be resolved at the pleading stage, and directs the Court's attention to inapplicable legal authorities.

### I. PLAINTIFF HAS PLAUSIBLY PLED A BREACH OF DUTY OF PRUDENCE CLAIM UNDER ERISA BASED ON EXCESSIVE RKA FEES

"To plead sufficient facts to raise an inference of a deficient decision-making process for recordkeeping services, parties must use a 'sound basis for comparison— a meaningful benchmark.'" *See Coyer*, 2022 WL 4534791, at *5 (quoting *Meiners v. Wells Fargo & Company*, 898 F.3d 820, 822 (8th Cir. 2018)). As in *Coyer*, Plaintiffs here have "plausibly alleged that the . . . RK&A fees were unreasonably excessive and suggest an imprudent decision-making process." *Id.*

In coming to this conclusion, Judge Gettleman in *Coyer* "agree[d] with plaintiffs that they do not need to provide examples of <u>similar</u> plans receiving the same services in the <u>same</u> year where, according to plaintiffs, the primary drivers of price in large plans are the number of accounts and whether the plan's fiduciaries solicited competitive bids, rather than the marginal cost of recordkeeping for each participant." *Id*. (emphasis in original). The court in *Coyer* also agreed "with

9

plaintiffs' assertion that '[t]he fact that each of the other similarly-sized plans were receiving at least the <u>same</u> services for less provides the kind of circumstantial evidence sufficient to create an inference of imprudence.'" *Id.* (citing *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 332 (3d Cir. 2019)) (emphasis in original).

Lest there be any doubt whether the *Coyer* court took recent developments in *Albert* into consideration, the court stated that its holding was "consistent with the Seventh Circuit's reasoning in *Albert*, where the court dismissed the plaintiffs' claim based on excessive recordkeeping fees." *Coyer*, 2022 WL 4534791, at *5–6. The court noted in this vein that "[i]n *Albert*, the court emphasized that plaintiffs must allege 'that the recordkeeping fees were excessive relative to the services rendered' and provide comparative context, as plaintiffs provide in the instant case." *Id.* at *6 (quoting in part *Albert*, 47 F.3d at 580).

*Coyer* is exactly on point with this case factually and legally, and the Court should reach the same outcome here. As an initial matter, Plaintiff pled sufficient facts to raise an inference of a deficient decision-making process for RKA services by utilizing a 'sound basis for comparison—a meaningful benchmark," in the form of sixteen comparator funds. ECF No. 8, ¶ 80. As in *Coyer*, Plaintiff here does not need to provide examples of similar plans receiving the *same services* in the *same year* where Plaintiffs have alleged that the primary drivers of price in mega plans are the number of accounts and whether the plan's fiduciaries solicited competitive bids, rather than the marginal cost of recordkeeping for each participant. ECF No. 8 ¶ 55 ("The underlying cost to a recordkeeper of providing recordkeeping to a defined contribution plan is primarily dependent on the number of participant accounts in the Plan rather than the amount of assets in the Plan"); *id.* ¶ 78 ("During the Class Period, Defendants failed to regularly solicit quotes and/or competitive bids from recordkeepers, including but not limited to Principal, in order to avoid paying unreasonable RKA fees.")

Because, as in *Coyer*, the fact that each of the other similarly-sized plans were receiving at least the same services for less provides the kind of circumstantial evidence sufficient to create an

inference of imprudence. *Id.* ¶ 81 ("From the years 2016 through 2020, the table below illustrates the annual RKA fees paid by other comparable plans of similar sizes with similar amounts of money under management, receiving a similar level and quality of services, compared to the average annual RKA fees paid by the Plan (as identified in the table above)."); *id.* ¶47 ("All recordkeepers quote fees for the Bundled RKA services on a per participant basis without regard for any individual differences in services requested, which are treated by the recordkeepers as immaterial because they are inconsequential from a cost perspective to the delivery of the Bundled RKA services."); *id.* ¶ 49 ("Because dozens of recordkeepers can provide the complete suite of required RKA services, plan fiduciaries can ensure that the services offered by each specific recordkeeper are apples-to-apples comparisons.")[6] Thus, it is not hyperbole to say that *Coyer* and this case are materially identical and thus, this case also meets the pleading standard established recently in *Hughes* and *Albert* for these types of claims.[7]

Even though this is a straightforward case, Defendants nevertheless repeatedly mischaracterize Plaintiff's imprudence claim against Pactiv. Defendants seek to complicate matters

---

[6] Moreover, and as alleged, because the recordkeepers of the comparator plans were receiving at least the same services for less, this is not a case in which "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs," *Hughes*, 142 S. Ct. at 742, or where "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *id.*, because these plans provide "standard bundled offerings of the same level and quality as other recordkeepers who service mega plans." ECF No. 8, ¶ 39; *see also* Secretary of Labor's Circuit Rule 54 Statement as *Amicus Curiae*, *Divane v. Northwestern University*, No. 18-2569 (Dkt. 49) (Mar. 31, 2022) (Plaintiffs' recordkeeping and investment fee allegations are not about "reasonable tradeoffs" between differently managed investments). In other words, where Plaintiff plausibly alleges that fiduciaries failed to offer the materially same RKA services at a lower cost when they could have done so, "difficult tradeoffs" are not at issue.

[7] Defendants are also incorrect that nothing in ERISA requires competitive bidding. ECF No. 17, at 7. For its part, *Albert* observed in this regard only that, "*Hughes* did not hold that fiduciaries are required to regularly solicit bids from service providers." *Albert*, 47 F.3d at 580. It is at best unclear if that holding from *Divane v. Northwestern Univ.* is good law until that case is decided on remand from the Supreme Court by the Seventh Circuit. *See Divane v. Northwestern Univ.*, 953 F.3d 980, 990- 91 (7th Cir. 2020); *but see George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 798-99 (7th Cir. 2011) (holding that "a reasonable trier of fact could have credited [the expert's] opinions and concluded that defendants' failure to solicit bids was imprudent."); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1133 (D. Colo. 2020) (finding a breach of fiduciary duty where the fiduciary had "not undertaken a single RFP in nearly 20 years, despite the recognized utility of an RFP for assessing reasonableness of fees.")

by maintaining: (1) that "[t]he Complaint fails to allege facts which plausibly show that Plan's recordkeeping and administrative fees are excessive 'relative to the services rendered,' as required by *Albert*," and "Plaintiff makes no attempt to plead actual facts to support his conclusory allegation that Principal's services are the 'same or similar' quality as those of every other recordkeeping and third-party administrator," ECF No. 17, at 9, 13; and (2) that "[d]uring the 2018 Plan Year, for example, the disclosure stated that the Plan's core administrative expenses resulted in fees of $42.25 to each participant's account balance, one twelfth of which is deducted each month." *Id.* at 4. Both of these arguments are erroneous and should be rejected by the Court.[8]

Plaintiffs' factual allegations establish, based on language in the Plan 5500 forms and financial disclosures that the fees charged were excessive in relation to the services provided by Principal. *See supra* pp. 3-6. Moreover, Plaintiffs did "not need to provide examples of similar plans receiving the <u>same</u> services in the <u>same</u> year where, according to plaintiffs, the primary drivers of price in large plans are the number of accounts and whether the plan's fiduciaries solicited competitive bids, rather than the marginal cost of recordkeeping for each participant." *Coyer*, 2022 WL 4534791, at *5 (emphasis in original). Because, as in *Coyer*, the fact that each of the other similarly-sized plans were receiving at least the same services for less provides the kind of circumstantial evidence sufficient to create an inference of imprudence." ECF No. 8, ¶ 81.

Defendants' arguments that "Plaintiff's assertion that every recordkeeper in the United States performs identical recordkeeping services at identical quality levels to thousands of different plans fails to meet the pleading standard in *Albert*," ECF No. 17, at 9, is undermined by the very Section 404(a)(5) fee disclosures that Defendants attach to this motion and argue should be considered part of

---

[8] Additionally, Defendants assert that Plaintiff's allegations amount to arguing "that the cheapest investment option is . . . necessarily the one a prudent fiduciary would select . . .," and "[t]he Complaint assumes that cheaper is always better." ECF No. 17, at 7-8. Not so. In fact, Plaintiff maintains the *exact opposite*: "the only way to determine the reasonable, as opposed to the cheapest or average, market price for a given quality and level of recordkeeping services is to obtain competitive bids from other providers in the market." ECF No. 8, ¶ 75. Yet, Defendants maintain that obtaining competitive bids is not necessary to determine reasonableness. *Id.*

12

the Amended Complaint. *See supra* pp. 6-7. Those Plan disclosures make clear that this Plan receives the exact suite of *typical* services that Plaintiff alleges in his Amended Complaint that all mega plans receive from recordkeepers like Principal. *See* ECF No. 8, ¶ 40; ECF No. 17, Exs. A-F (Plan participant fee disclosures from 2016-202).[9] These allegations, given Plaintiff's lack of access to additional Plan documents, *Allen*, 835 F.3d at 678, are more than sufficient to show the plausibility of Plaintiff's allegations.

Defendants' allegations regarding Plan Form 5500 service codes do not undermine the allegations that these plans were receiving at least the same services as the Pactiv Plan. ECF No. 17, at 10. This is because there is simply no exact science as to how plan administrators determine what service codes to use, and the Form 5500 instructions do not specify. Indeed, Judge Norgle rejected these exact same arguments in *Lafreniere*, Case No. 1:20-cv-07158, Dkt. No. 27, at *3, observing that "even if the Court looks beyond Plaintiffs' amended complaint to the comparator plans' 5500 Forms attached to a declaration from Defendants' counsel, the forms do not conclusively establish what Defendants claim." This Court should similarly conclude here.

Finally, Defendants' assertions that Plaintiff has not pled facts that support his contention that Principal's quality of RKA services are similar to other Plan recordkeepers that services mega plans is simply wrong. In this regard, Plaintiff has pled that "[a]nother top recordkeeper, Fidelity, has admitted that the RKA services that it provides to mega Plans are commodified, including to its own Plan for its own employees. As part of stipulated facts in another case, it stated: 'The value of the recordkeeping services that Fidelity provided to the Plan in 2014 was $21 per participant; the value of the recordkeeping services that Fidelity provided to the Plan in 2015 and 2016 was $17 per participant, per year, and the value of the recordkeeping services that Fidelity has provided to the Plan since

---

[9] Defendants cannot have it both ways when it comes to the Section 404(a)(5) Plan participant fee disclosures. That is, Defendants should not be able to utilizes these fee disclosures strategically to prove its own assertions in support of its motion, and then simultaneously contend that these same fee disclosures may not be considered as part of Plaintiff's allegations to show the plausibility of Plaintiff's claims.

13

January 1, 2017 is $14 per participant, per year. Had the Plan been a third-party plan that negotiated a fixed fee for recordkeeping services at arm's length with Fidelity it could have obtained recordkeeping services for these amounts during these periods. *The Plan did not receive any broader or more valuable recordkeeping services from Fidelity than the services received by any other Fidelity-recordkept plan with at least $1 billion in assets* during the Class Period (November 18, 2014 to the present).' *See Moitoso v. FMR LLC, et al.*, 1:18-CV-12122-WGY, Stipulation of Facts, Dkt. 128-67, at 4-5 (D. Mass. Sep. 6, 2019) (emphasis added)." ECF No. 8, ¶¶ 45-46. Clearly, Defendants disagree with the import of this admission by Fidelity on this Plan and its administration by Principal, but that is a factual dispute not appropriate for resolution at the pleading stage.

Second, the Section 404(a)(5) Exhibits attached by Defendants support Plaintiff's calculation of the Plan's RKA fees. ECF No. 8, ¶ 80. Those documents make clear that Plaintiff and Plan participants paid both a flat direct Plan administrative expense (e.g., $46.80 per year in 2020), *and* an additional indirect revenue sharing fee for "services such as legal, auditing, other service provider, consulting or investment advice." ECF No. 17, Ex. E, at 2.[10] To be clear, these are *not ad hoc, individual* fees, but part of the *Bundled RKA fees* Plan participants pay out of their individual accounts.

Plaintiff has calculated the total *direct* and *indirect* fees paid by Plan participants in 2020 at $71 per year per Plan participant, ECF No. 8, ¶¶ 58, 80, suggesting that indirect revenue sharing fees of an additional $24.20 were paid by Plan participants in 2020. It is therefore Defendants' RKA fee

---

[10] Defendants wrongly appear to suggest that Plaintiff is only challenging the fees paid to Principal as far as RKA fees. ECF No. 17, at 4. Not so, and hence the use of the term, "RKA." Plaintiff is challenging *all* Bundled RKA fees, whether paid to Principal or any other Plan service provider. *See* ECF No. 8, ¶ 117 ("Defendants breached their fiduciary duty of prudence to Plan participants, including to Plaintiff, by failing to: ensure that the Plan's RKA fees were objectively reasonable, defray reasonable expenses of administering the Plan, and act with the care, skill, diligence, and prudence required by ERISA."). Indeed, the Amended Complaint makes clear that the specific allegations regarding Principal are *in addition* to those made more generally against all service providers. *Id.* ¶ 118 ("Defendants *further* had a continuing duty to regularly monitor and evaluate the Plan's recordkeeper, Principal, to make sure it was providing the recordkeeping services at reasonable costs, given the highly competitive market surrounding recordkeeping and the significant bargaining power the Plan had to negotiate the best fees, and remove the recordkeeper if it provided record-keeping services at objectively unreasonable costs.").

calculations that are suspect, not Plaintiff's, or at least there is a factual definitional disagreement over what makes up RKA fees. Of course, to the extent that Defendants disagree with Plaintiff's RKA fee calculations, ECF No. 17, at 4-5, a factual dispute exists that is not ripe for resolution on a motion to dismiss. *See Indep. Trust Corp. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).

In short, taken as true, Plaintiff's allegations plausibly establish that Defendants breached their fiduciary duty of prudence under *Tibble*, applying the pleading standards discussed in *Twombly* and *Iqbal*. As such, Defendants' motion to dismiss Plaintiff's breach of the fiduciary duty of prudence claim must be rejected here as they were previously and correctly in *Coyer*.

## II. PLAINTIFFS HAVE STATED CLAIM FOR BREACH OF THE DUTY TO MONITOR

In addition to stating a claim for breach of the fiduciary duty of prudence against Defendants, Plaintiff has stated claims against Pactiv and its Board for failure to adequately monitor individuals appointed by them and responsible for Plan administration. ECF No. 8, ¶¶ 27; 124-130. Because Plaintiff has stated plausible claims for breach of the fiduciary duty of prudence, he is also entitled to pursue his failure to monitor claims. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011).

## CONCLUSION

For the above reasons, Defendants' motion to dismiss the Amended Complaint should be denied in its entirety.

Dated: January 16, 2023　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　s/ Paul M. Secunda
　　　　　　　　　　　　　　　　　　　　　　James A. Walcheske
　　　　　　　　　　　　　　　　　　　　　　Paul M. Secunda

　　　　　　　　　　　　　　　　　　　　　　WALCHESKE & LUZI, LLC
　　　　　　　　　　　　　　　　　　　　　　125 South Wacker Drive, Suite 300
　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　　　Telephone: (224) 698-2630
　　　　　　　　　　　　　　　　　　　　　　Fax: (262) 565-6469
　　　　　　　　　　　　　　　　　　　　　　jwalcheske@walcheskeluzi.com
　　　　　　　　　　　　　　　　　　　　　　psecunda@walcheskeluzi.com

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 16, 2023, the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Amended Complaint was filed via the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ Paul M. Secunda
Paul M. Secunda