IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL MAZZA individually, and as representative of a Class of Participants and Beneficiaries of the Pactiv Evergreen Services Inc. Employee Savings Plan,<br><br>    Plaintiff,<br><br>v.<br><br>PACTIV EVERGREEN SERVICES INC.<br><br>and<br><br>THE BOARD OF DIRECTORS OF PACTIV EVERGREEN SERVICES INC.,<br><br>    Defendants. | No. 1:22-cv-5052<br><br>Judge Sara L. Ellis |

**REPLY MEMORANDUM IN FURTHER SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff's Complaint fails to allege a plausible claim that the Plan paid unreasonable recordkeeping fees. As explained in the Defendants' Opening Brief,[1] Plaintiff's attempt to compare the Employee Savings Plan's (the "Plan") recordkeeping fees to sixteen cherry-picked plans out of hundreds of thousands fails to establish a plausible breach of fiduciary duty under the Seventh Circuit's recent decision in *Albert v. Oshkosh*, 47 F.4th 570, 579-80 (7th Cir. 2022). *Albert* holds that a plaintiff "cannot proceed to discovery solely on the basis that the Plan paid higher recordkeeping fees than a potentially random assortment….of plans from around the country." 47 F.4th at 580. Relying on the "context-sensitive inquiry" recently re-affirmed in *Hughes v. Nw. Univ.*, 142 S.Ct. 737, 740 (2022), *Albert* stated that an imprudence claim for

---

[1] Defendants' Memorandum in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint is referred to as "Opening Brief," and cited to in this Reply Brief as (Op. Br. __). Plaintiff's Response Brief in Opposition to Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 23) is referred to as Plaintiff's "Response Brief," and is cited as (Resp. Br. __).

1

recordkeeping services must include factual allegations which plausibly show that fees "were excessive relative to services rendered." 47 F.4th at 580.

As explained more fully below, Count I fails as a matter of law. The sixteen comparator plans are exactly the sort of "random assortment" of plans that *Albert* holds cannot create an inference of imprudence. Moreover, as explained in Defendant's Opening Brief, *Albert* rejected Plaintiff's theory that a fiduciary can only meet its obligations to ensure reasonable fees by engaging in regular competitive bids. Plaintiff simply refuses to accept that this holding is the law, arguing that the issue remains at open question in the Seventh Circuit. However, the holding in *Albert* forecloses this theory.

For the reasons stated below, the Complaint fails to meet *Albert*'s context-specific pleading requirement because it says nothing about the scope and quality of the services rendered to the comparator plans. As explained in Defendants' Opening Brief, the Complaint attempts to plead around *Albert* by repeating in platitudes that every service provider provides the exact same scope and quality of services to hundreds of thousands of 401(k) plans. This attempt to side-step *Albert*'s pleading requirement fails to state a claim, and is contradicted by the Complaint and the documents upon which it relies. Accordingly, the Complaint fails to state a plausible claim for relief under *Albert* as to Count I. Count II should be dismissed as Plaintiff's failure to monitor claim rises or falls with his breach of fiduciary duty claim in Count I.

I. **ARGUMENT**

    A. **Count I Fails to Allege a Plausible Claim for Breach of Fiduciary Duty.**

As explained in Defendants' Opening Brief, the Amended Complaint fails to allege facts showing a plausible claim under *Albert*.

1.     **Plaintiff's Cherry-Picked Comparator Theory Fails to State a Claim.**

As explained in Defendants' Opening Brief, Plaintiff's attempt to point to sixteen out of hundreds of thousands of plans that it claims paid lower fees than the Plan cannot state a claim because the Seventh Circuit has "repeatedly emphasized that the cheapest…option is not necessarily the one a prudent fiduciary would select." *Albert*, 47 F.4th at 579; *see* (Op. Br. at pp. 7-8.) Accordingly, the mere existence of *some* plans that may pay less in recordkeeping fees cannot create an inference of a flawed fiduciary process because it "says nothing about the reasonableness of the Plan's fees." *Albert v. Oshkosh*, 2021 WL 3932029, at *5 (E.D. Wis. Sept. 2, 2021), *aff'd*, 47 F.4th 570 (7th Cir. 2022).

Here, Plaintiff alleges no facts demonstrating that the Plan paid less than the average of *all* similarly sized plans receiving the same scope or quality of services. Instead, Plaintiff relies on a handful of comparator plans, which range significantly in terms of number of participants and assets. *See Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108, at *8 (W.D. Pa. Aug. 18, 2022) (noting that such disparities raise "serious doubts" as to the comparison); *Probst v. Eli Lily and Company, et al.*, 2023 WL 1782611, at *11-12 (S.D. Ind. Feb. 2, 2023) (same). None of these sixteen plans use Principal as a recordkeeper, and Plaintiff makes no attempt to explain how these plans were selected, which further demonstrates that this is exactly the type of "random assortment of plans" that *Albert* holds is insufficient to create an inference of imprudence. *See* (Op. Br. pp. 7-8.).

Instead, Plaintiff relies heavily on *Lafreniere v. RR Donnelley & Sons, et al.*, 20-C-07158 (N.D. Ill. Jan. 3, 2022), which he claims is a "recent" decision that involved a "materially similar" motion that favors his case. (Resp. Br. at p. 1.) However, this decision is unpublished and is not "recent." The unpublished order in *Lafreniere* was issued in January 2022, well before the Seventh Circuit's decision in *Albert*, which is now the binding Seventh Circuit law as it relates to the claims

3

at issue. Accordingly, *Lafreniere* is inapposite. *Albert* requires more than a naked fee-to-fee comparison to a cherry-picked group of plans purportedly paying lower fees to survive a motion to dismiss.

Furthermore, Plaintiff's argument that "a failure to regularly solicit quotes or competitive bids" has also been rejected by *Albert*. In his Response Brief, Plaintiff claims that Defendants misread *Albert* and the viability of this theory remains an open question in the Seventh Circuit. *See* (Resp. Br. at n. 7.) As explained previously, *Albert* rejected Plaintiff's competitive bid theory as insufficient to state a claim for fiduciary breach as a matter of law. 47 F.4th at 579-80. Not only did the Court apply this reasoning to the facts in *Albert*, but the Court also expressly stated that nothing in *Hughes* changed its prior precedent in *Divane*, *Hecker*, and *Loomis* on this point. *See Albert*, 47 F.4th at 579-80; *see also Glick v. Thedacare, Inc.*, 2022 WL 16927749, at *3 (E.D. Wisc. Oct. 27, 2022) (recognizing that *Albert* held: "a failure to regularly solicit quotes or competitive bids from service providers does not, as a matter of law, breach the duty of prudence."); *Baumeister v. Exelon Corp.*, 2022 WL 4477916, at *2 (N.D. Ill. Sept. 22, 2022) (same); *Probst,* 2023 WL 1782611, at *9 (same). *Albert*'s re-affirmance of Seventh Circuit precedent and its holding remains binding law in this Circuit and compels dismissal of the Complaint.

### 2. The Complaint Fails to Meet *Albert'*s Context-Sensitive Pleading Requirement.

As explained in Defendants' Opening Brief, Plaintiff's attempt to claim that all recordkeepers perform identical services at identical quality levels for every plan in the United States fails to meet *Albert*'s "context-sensitive" pleading requirement. (Op. Br. at pp. 9-12.) Defendants explained that this theory contradicts *Albert*'s reasoning and U.S. Department of Labor guidance, both of which state that fiduciaries must consider the scope and quality of services when

4

considering service providers. *See* (Op. Br. at pp. 10-11.) Defendants also explained that the Form 5500s and participant fee disclosures which form the basis of the Complaint directly contradict Plaintiff's conclusory allegations.

        a.      **Plaintiff's Claim that Every Recordkeeper Performs the Same Services For Every Plan Is Conclusory.**

In response, Plaintiff points to his "voluminous and detailed factual allegations," in an attempt to save his claims. (Resp. Br. at pp. 3-4.) However, there is nothing in the Complaint that alleges any facts related to the actual services the comparator plans receive. Each of the allegations Plaintiff refers to is a variation of the same theme that every recordkeeper provides the same scope and quality of services to every plan, rather than factual allegations showing that the comparator plans actually receive the same services as those provided to the Plan by Principal.[2] *See* (Compl. ¶¶ 38, 42-45, 47-48, 52-53, 57, 63, 92, 100.) Accordingly, these allegations are conclusory in nature and should be rejected as insufficient under *Albert*. *See Glick*, 2022 WL 16927749, at *3 (acknowledging generalized pleadings by the same law firm, and holding that: "Crucially….the amended complaint does not contain any allegations concerning the *specific services* performed by the comparator plans' recordkeepers or any allegations supporting a plausible inference that the plan's recordkeeping services were equivalent to those provided by the comparator plans.");

---

[2]Plaintiff relies heavily on a stipulation filed in *Moitoso v. FMR LLC, et al.*, 1:18-CV-12122-WGY, Dkt. No. 77 ¶ 138 (D. Mass. May 2, 2019), but the stipulation has nothing to do with this case. Fidelity stipulated to the value of the recordkeeping services it provided to its plan own plan participants, and stated that "[h]ad the [Fidelity] Plan been a third-party plan that negotiated a fixed fee for recordkeeping services at arm's length with Fidelity, it could have obtained recordkeeping services for these amounts during these periods." *Id.* at Dkt. No. 138-67 ¶ 2 (Sept. 6, 2019). Fidelity also stipulated that it "did not receive any broader or more valuable services from Fidelity than the services received by any other Fidelity-recordkept plan with at least $1 billion in assists during the Class Period . . . ." *Id*. This stipulation does not show that "the RKA services that [Fidelity] provides to mega Plans are commodified," as Plaintiff alleges (Am. Compl. ¶ 45), nor does it show that the recordkeeping market as a whole, or the services provided by Principal, the recordkeeper at issue in this case, are commoditized. Rather, it simply states that Fidelity did not provide any broader or more valuable services to its own plan participants than what other plans could have obtained from Fidelity through arm's length negotiations during the years in question.

*Probst*, 2023 WL 1782611, at *10 (dismissing pleadings by the same law firm that all recordkeepers perform the same services at the same quality level as "wholly conclusory."); *see Mator, Inc.*, 2022 WL 3566108, at *7-8 (rejecting similar allegations as conclusory and dismissing complaint for failure to allege specific services related to comparator plans).

      b.    **Plaintiff's Conclusory Allegations Are Contradicted by the Form 5500s and Fee Disclosures Referred to in the Complaint.**

As explained previously, not only does the Complaint lack context-sensitive factual allegations, but Plaintiff's allegation that the comparator plans are receiving the identical scope and quality of services from other providers is contradicted by the very documents upon which these allegations rely. (Op. Br. at pp. 10-11.) As explained on page 10 of Defendants' Opening Brief, the Form 5500s show that many of the comparator plans *do not* receive the same scope and quality of services for the same plan cost because they disclose publicly that the plan sponsor either pays for or actually performs the exact services which Plaintiff claims every recordkeeper performs and charges every plan for. (Op. Br. at p. 10, n. 6-7) (identifying examples of comparator plans which specifically state in the Form 5500 that the plan sponsor actually performs some or "a majority" of the administrative services to the plan, including "recordkeeping", "legal", "accounting", and "administrative" services). This showing demonstrates both that: (1) Plaintiff's conclusory theory that every recordkeeper performs the same scope of services is contradicted by the documents referenced in the Complaint; and (2) the fees related to the comparator plans are not an "apples to apples" comparison.[3]

---

[3] Obviously, if a plan sponsor either pays for or performs all or a majority of the services which Plaintiff refers to as "Bundled RKA" or "Ad Hoc RKA," it will have lower recordkeeping and administrative fees reported as paid out of plan assets on its Form 5500.

Similarly, Defendants explained that the service codes listed on the comparator plans' Form 5500s also contradict Plaintiff's conclusory allegations that every service provider performs the exact same services for every plan. *See* (Op. Br. at p. 10, n. 8.) Plaintiff does not dispute this showing, but instead argues that there "is simply no exact science as to how plan administrators determine what service codes to do." (Resp. Br. p. 13.) The Court should reject this argument. Plaintiff cannot rely on the fees disclosed on the Form 5500s as the core allegation in the Complaint, while simultaneously ignoring the plans' identification of the services it received for those fees. *See Probst*, 2023 WL 1782611, at *11-12 (dismissing claim and rejecting the same argument by same counsel and finding that Form 5500 service codes undermined claims that comparator plans received similar services); *Mator*, 2022 WL 3566108, at *8 (dismissing amended complaint, in part, based on failure to plead similar services where Form 5500 service codes showed different types of services).

          c.    **Plaintiff Ignores Services Performed by Principal That Are Not "Bundled" or "Ad Hoc" Services as Described in the Complaint.**

In his Response Brief, Plaintiff also relies on generalized allegations that the Plan receives "standard" services. However, Plaintiff ignores Defendants' showing—based on the documents referred to in the Complaint—that the Plan receives certain services that are not "standard" from Principal. As explained on page 11 of Defendants' Opening Brief, the Plan's Managed Account Program is not within the scope of any of the services listed as "Bundled RKA" or "Ad Hoc RKA" in the Complaint, yet Plaintiff includes these fees in his calculation of the per-participant fees the Plan pays to Principal. *See* (Compl. ¶¶ 40-44; Op. Br. n. 8 (explaining Plaintiff's "Est. RKA Fees"

7

calculation and Managed Account fees.))[4] However, there are no allegations to even remotely suggest that the comparator plans pay the identified recordkeepers for this service, which further demonstrates that Plaintiff is comparing apples to oranges.[5]

       d.  ***Coyer* is Inconsistent with *Albert* and Relies on Flawed Reasoning.**

In response to these arguments, Plaintiff relies heavily on *Coyer v. Univar Solutions USA Inc.*, and argues that the Court should follow its reasoning. 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022). The Court should reject Plaintiff's argument and should not follow *Coyer* for the following reasons: First, *Coyer* is not binding on this Court and its reasoning is inconsistent with *Albert*. In *Coyer*, the district court stated that plaintiffs "do not need to provide examples of similar plans receiving the <u>same</u> services in the <u>same</u> year where, according to plaintiffs, the primary drivers of price in large plans are the number of accounts and whether the plan's fiduciaries solicited competitive bids…" 2022 WL 4534791, at *5.

As an initial matter, *Coyer* improperly relied on complaint allegations stating that the plan fiduciary breached its duty by failing to "solicit competitive bids," which is a theory that *Albert*

---

[4] In his Response Brief, Plaintiff acknowledges that the ERISA 404(a)(5) fee disclosures attached to Defendants' Opening Brief are referred to in the Complaint and are properly considered on a motion to dismiss. (Resp. Br. n. 3.)

[5] Plaintiff attempts to create a fact dispute by arguing that the difference between his fee calculation and the disclosed $46.80 for Plan Year 2020 is solely attributable to "revenue sharing." (Resp. Br. p. 14.) However, again, Plaintiff's arguments in his brief are contradicted by the documents which form the basis of the Complaint. The Form 5500s on which Plaintiff relies show that a portion of Principal's fees are collected as part of the Principal Managed Account Program, and then a portion of that reported expense is paid to Morningstar by Principal as compensation for their investment advisory services. (Op. Br. p. 5 (citing Ex. 4, Sched. C at 4 and Gonzales Decl. Ex. 1, Ex. C at 3-4.)) Plaintiff again ignores the existence of the Managed Account Program and its impact on Principal's reported compensation because it does not fit his conclusory narrative that every recordkeeper performs the same services. Moreover, the undisputed documents upon which the Complaint relies demonstrates that, as part of its negotiated fee structure with Principal, the Plan credits back 100% of any revenue sharing for recordkeeping to participant accounts. *See* (Op. Br. pp. 4-5.)

flatly rejected. *See, supra*, at p. 4.⁶ Moreover, to the extent that *Coyer* relied on allegations that every recordkeeper performs the same services rather than context-sensitive allegations regarding the services of the plan and the alleged comparator plans, its reasoning is inconsistent with *Albert*'s pleading requirement. *See Probst*, 2023 WL 1782611, at *8-10 (holding that *Coyer*'s analysis is inconsistent with *Albert*); *see also Baumeister*, 2022 WL 4477916, at *2; *Glick*, 2022 WL 16927749, at *3; *see also Laabs v. Faith Tech*, 2022 WL 17418358, at *2 (E.D. Wis. Nov. 9, 2022), *adopted by* 2022 WL 17417583 (E.D. Wis. Dec. 5, 2022) (dismissing recordkeeping claim under *Albert* based on complaint that referred to the "standard services" provided to the plan, but failed to plead facts identifying the *specific services* rendered to the comparator plans); *Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 279-80 (8th Cir. 2022) (affirming dismissal of recordkeeping fee claims and relying on *Albert*).

Second, the complaint allegations in *Coyer* are distinguishable. Plaintiff appears to argue that *Coyer* stands for the proposition that he does not need to allege that the comparator plans received exactly the same services, but only that they received at least the same services for less. (Resp. Br. pp. 10-11.) However, this argument only further supports dismissal. As explained above, the documents upon which the Complaint relies show that (1) the Plan is receiving *greater* services (i.e., Managed Account Program), and (2) many of the comparator plans are receiving less services than the Plan. *Supra*, at pp. 6-7. Paying *more* for *more* services – or paying *less* for *less* services – does not create an inference of a flawed fiduciary process. For this additional reason, Plaintiff's reliance on *Coyer* should be disregarded.

---

⁶ *Coyer* also relied on and cited *Sweda v. Univ. of Penn.*, 923 F.3d 320, 332 (3d Cir. 2019). In *Sweda*, the Third Circuit relied, in part, on similar allegations that plan fiduciaries breached their duties due to a failure to solicit competitive bids. *Id.* at 330-31. This aspect of *Sweda* is in conflict with *Albert*. *See supra*, at p. 4. The complaint in *Sweda* also involved highly specific and detailed factual allegations regarding comparator plans' recordkeeping fees, which further distinguishes its reasoning. *See id*, at p. 331.

9

### B.  Count II Fails to State a Claim for Relief.

Plaintiff does not dispute that his duty to monitor claim in Count II of the Complaint rises or falls with his breach of fiduciary duty claim in Count I.  Because Plaintiff fails to state a claim for breach of fiduciary duty, his duty to monitor claim in Count II also should be dismissed.  *See Albert*, 47 F.4th at 583 ("Because we affirm the dismissal of [plaintiff's] fiduciary duty claims, [his derivative] claims must fail as well."); *Glick*, 2022 WL 16927749, at *6.

## II.  CONCLUSION

As explained above, the Complaint fails to allege specific facts about the scope and quality of services rendered to the comparator plans and ignores unique services performed by Principal for the Plan which are included in the fees the Plan pays to principal.  Plaintiff cannot side-step the Seventh Circuit's decision in *Albert* by pleading in platitudes that every recordkeeper in the country performs exactly the same services for every plan in every situation.   For these reasons, the Court should dismiss the Complaint in its entirety pursuant to Rule 12(b)(6).

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Reply Memorandum in Further Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint was served upon the following counsel of record via ECF on this 10th day of February 10, 2022.

**Counsel for Plaintiff**

James A. Walcheske
Paul M. Secunda
Walcheske & Luzi, LLC
125 S. Wacker Dr. | Suite 300
Chicago, IL 60606
Telephone: (224) 698-2630
jwalcheske@walcheskeluzi.com
psecunda@walcheskeluzi.com

    */s/ Patrick Spangler*
Patrick Spangler #6290810
Michelle Olson #6302687
Vedder Price P.C.
222 North LaSalle Street
Chicago, IL 60601-1003
Telephone: (312) 609-7500
Facsimile: (312) 609-5005
pspangler@vedderprice.com
molson@vedderprice.com