UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MAZZA, individually, and as
representative of a Class of Participants
and Beneficiaries of the Pactiv Evergreen
Services Inc. Employee Savings Plan,

        Plaintiff,                        Case No: 1:22-cv-5052

        v.

PACTIV EVERGREEN SERVICES INC., et al.

        Defendants

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................. iii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

    I.    PROCEDURAL HISTORY ................................................**Error! Bookmark not defined.**

        A.    Pleadings and Motion to Dismiss .............................**Error! Bookmark not defined.**

        B.    Mediation and Settlement ........................................**Error! Bookmark not defined.**

        C.    Settlement Terms……………………………………………………………….3

        D.    Release of Claims .................................................................................................5

    II.    CLASS NOTICE AND REACTION TO THE SETTLEMENT...........................................5

    III.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY .......................................7

ARGUMENT......................................................................................................................8

    I.    LEGAL STANDARD ................................................................................................8

    II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...................................9

        A.    The Class Representatives and Class Counsel Have Adequately Represented the
            Class.....................................................................................................................9

        B.    Settlement Is the Product of Arm's-Length Negotiations BetweenExperienced,
            Capable Counsel ...................................................................................................9

        C.    The Settlement Provides Substantial Monetary Relief to the Class .........................10

        D.    The Settlement Proceeds Will Be Distributed Equitably and Efficiently.................13

        E.    The Class, Independent Fiduciary, and Counsel Support the Settlement .................13

    III.    THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE ..........................14

    IV.    THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT
        CLASS................................................................................................................15

CONCLUSION .................................................................................................................16

CERTIFICATE OF SERVICE .............................................................................................17

**Cases**

Abbott v. Lockheed Martin Corp.,
   3:06-cv-00701, Dkt. 526 (S.D. Ill. July 20, 2015)........................................................................14

Allegretti v. Walgreen Co.,
   1:19-cv-05392, Dkt. 116 (N.D. Ill. Feb. 16, 2022)..............................................................15, 16

Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.,
   2012 WL 651727  (N.D. Ill. Feb. 28, 2012) ........................................................................10, 11

Beach v. JPMorgan Chase Bank, Nat'l Ass'n,
   No. 17-cv-00563, Dkt. 211 (May 20, 2020), approved 2020 WL 6114545  (S.D.N.Y. Oct. 7,
   2020)..................................................................................................................................................12

Bhattacharya v. Capgemini N. Am., Inc.,
   No. 1:16-cv-07950, Dkt. 114 (N.D. Ill. Nov. 13, 2018)........................................................2, 15

Dolins v. Cont'l Cas. Co.,
   No. 1:16-cv-08898, Dkt. 133 (N.D. Ill. Sept. 20, 2018).............................................................11

Eubank v. Pella Corp.,
   2019 WL 1227832 (N.D. Ill. Mar. 15, 2019) ................................................................................9

Hale v. State Farm Mut. Auto. Ins. Co.,
   2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ................................................................................14

Hughes v. Northwestern Univ.,
   142 S. Ct. 737 (2022)........................................................................................................................3

In re Household Int'l, Inc. ERISA Litig.,
   2004 WL 7329911 (N.D. Ill. Nov. 22, 2004) ..............................................................................13

In re Rite Aid Corp. Sec. Litig.,
   146 F. Supp. 2d 706 (E.D. Pa. 2001)............................................................................................13

In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.,
   2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ..........................................................................14

Isby v. Bayh,
   75 F.3d 1191 (7th Cir. 1996) ..............................................................................................9, 10, 16

Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,
   2018 WL 2183253 (N.D. Cal. May 11, 2018)...............................................................................12

Lively v. Dynegy, Inc.,
   2008 WL 4657792 (S.D. Ill. Sept. 30, 2008).................................................................................15

Loomis v. Exelon Corp.,
    658 F.3d 667 (7th Cir. 2011) ............................................................................................11

Nolte v. Cigna Corp.,
    No. 2:07-cv-02046, Dkt. 412  (C.D. Ill. Oct. 15, 2013) ....................................................14

Phillips Petroleum Co. v. Shutts,
    472 U.S. 797 (1985) ..........................................................................................................14

Price v. Eaton Vance Corp.,
    No. 18-12098, Dkt. 32 (May 6, 2019), approved Dkt. 57 (D. Mass. Sept. 24, 2019).. ............10

Ramos v. Banner Health,
    461 F. Supp. 3d 1067 (D. Colo. 2020), aff'd, 1 F.4th 769 (10th Cir. 2021) ...................13

Redman v. RadioShack Corp.,
    768 F.3d 622 (7th Cir. 2014) ..............................................................................................9

Schulte v. Fifth Third Bank,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................................11, 13, 14

Seiden v. Nicholson,
    72 F.R.D. 201 (N.D. Ill. 1976) .........................................................................................14

Sims v. BB&T Corp.,
    2019 WL 1995314 (M.D.N.C. May 6, 2019) ...................................................................12

Snyder v. Ocwen Loan Servicing, LLC,
    2019 WL 2103379 (N.D. Ill. May 14, 2019)......................................................................9

Spano v. Boeing Co.,
    3:06-cv-00743, Dkt. 588 (N.D. Ill. Mar. 31, 2016)....................................................13, 14

T.K. Through Leshore v. Tech. Co.,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .....................................................................15

Toomey v. Demoulas Super Markets, Inc.,
    No. 1:19-cv-11633, Dkt. 95 (Mar. 24, 2021), approved Dkt. 100 (D. Mass. Apr. 7, 2021) .........12

Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,
    2018 WL 8334858 (C.D. Cal. July 30, 2018)...................................................................12

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
    396 F.3d 96 (2d Cir. 2005) ...............................................................................................10

Williams v. Rohm & Haas Pension Plan, 2010 WL 1490350
    (S.D. Ind. Apr. 12, 2010), aff'd, 658 F.3d 629 (7th Cir. 2011).......................................13

Wong v. Accretive Health, Inc.,
    773 F.3d 859 (7th Cir. 2014) .............................................................................11

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .................................................7

**Rules**

Federal Rule of Civil Procedure 23(b)(1)(A) ................................................15
Federal Rule of Civil Procedure 23(b)(1)(B) ................................................15
Federal Rule of Civil Procedure 23(e).....................................................passim
Federal Rule of Civil Procedure 23(e)(2) ......................................................8

**Treatises**

Restatement (Third) of Trusts, § 100 cmt. b(1)............................................11

**Regulations**

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632,
    as amended, 75 Fed. Reg. 33830 ..................................................................7

## INTRODUCTION

On April 23, 2024, this Court preliminarily approved the parties' Class Action Settlement Agreement, which resolves Plaintiff Michael Mazza's class action claims against Defendants, Pactiv Evergreen Services, Inc. ("Pactiv"), and its Board of Directors, relating to the management of the Pactiv Evergreen Services Employee Savings Plan ("Plan").[1] *See Dkt. 50*. The Court found "the Settlement Agreement is sufficiently within the range of reasonableness to warrant the preliminary approval of the Settlement Agreement, the scheduling of the Fairness Hearing, and the mailing of Notices to Settlement Class Members, each as provided for in this Order. The Court further finds, on a preliminary basis, that the proposed formula set forth in the Plan of Allocation for allocating the Distributable Settlement Fund among Settlement Class Members is fair and reasonable." *Id., ¶ 2*. The events following this order confirm that the Settlement is fair and reasonable and warrants final approval.

**First**, an Independent Fiduciary reviewed the Settlement pursuant to Department of Labor ("DOL") regulations and independently determined that the Settlement terms are reasonable. *See Declaration of Paul M. Secunda in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Secunda Decl. in Support of Final Approval") Ex. 1 (Report of the Independent Fiduciary)*. Among other things, the Independent Fiduciary found that "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable

---

[1] A copy of the Class Action Settlement Agreement ("Settlement Agreement") embodying the compromise and settlement between the parties ("Settlement") is attached as **Exhibit 1** to the Declaration of Paul Secunda in Support of Preliminary Approval of the Class Action Settlement (*"Secunda Decl."). Dkt. 47-1*. All capitalized terms that are not otherwise defined in this Memorandum of Law have the meaning assigned to them in the Settlement Agreement.

in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Id.* at 2.

**Second**, notice of the Settlement was provided to 33,870 Class Members, and in response no objections were received. *Declaration of Jeffrey Mitchell in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Mitchell Decl.")* ¶¶ 7, 15. The fact that the class members voiced no concerns about the Settlement further demonstrates that the Settlement is fair and reasonable. *See Bhattacharya v. Capgemini N. Am., Inc.,* No. 1:16-cv-07950, Dkt. 114, at *4 (N.D. Ill. Nov. 13, 2018).

Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement. This motion is unopposed by the Defendants.

## BACKGROUND

## I. PROCEDURAL HISTORY[2]

### A. Pleadings and Motion To Dismiss

In the Amended Complaint, *Dkt. 8*, Plaintiff alleges that "[d]uring the putative Class Period (September 16, 2016, through the date of judgment), Defendants, as fiduciaries of the Plan, as that term is defined under ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duty of prudence they owed to the Plan by requiring the Plan to 'pay[ ] excessive recordkeeping fees,' *Hughes,*142 S. Ct. 737, 739-740 (2022), and by failing to timely remove their high-cost recordkeeper, Principal Life Insurance Company ("Principal")." *Id.,* ¶ 5. On December 9, 2022, Defendants filed a motion to dismiss the Amended Complaint. *Dkts. 16-18.* This motion was briefed

---

[2] The procedural history of this case was previously discussed in connection with Plaintiffs' motion for preliminary approval, *Dkt. 46, at 2–3,* and motion for attorneys' fees, administrative expenses, and a case contribution award. *Dkt. 56 at 2–4.* For ease of reference, Plaintiff has recounted that history here.

thoroughly with numerous supplemental authorities submitted, through May 16, 2023. *Dkts. 25-31.* Thereafter, on May 18, 2023, the Court denied Defendants' motion to dismiss the Amended Complaint. *Dkts.* 32-33. On June 15, 2023, Defendants answered the Amended Complaint, *Dkt.* 38, and then the parties entered into a proposed stipulation staying the matter to allow the parties to engage in voluntary mediation, *Dkt.* 39, and the Court entered a stay on January 8, 2024 pending mediation. *Dkt. 42.*

### B.   Mediation and Settlement

The parties engaged in a full-day mediation with a neutral mediator, the Hon. Morton Denlow, on January 29, 2024.[3] *Secunda Decl., ¶ 10.* After extensive arm's length negotiations, the parties reached a settlement in principle, signed a settlement term sheet, and then prepared the comprehensive Settlement Agreement. *Id. ¶ 11.* The parties filed a joint status report on January 30, 2024, advising the Court of the Settlement and asking that the case continue to be stayed until the Motion for Preliminary Approval could be drafted. *Dkt. 43.* On February 20, 2024, this Court granted the continuance of the stay and ordered that this preliminary approval motion be filed by Plaintiff by February 29, 2024. *Dkt. 44.* Plaintiff submitted the materials for preliminary approval on February 29, 2024, *Dkts. 45-48*, and the Court granted preliminary approval of the Settlement on March 4, 2024, and entered it on April 23, 2024. *Dkts 49-50.*

### C.   Settlement Terms

The Settlement Class is defined as follows:

> All participants and beneficiaries of the Plan, September 16, 2016 through March 31, 2024, excluding the Defendants or any Plan participant who is or was a fiduciary to the Plan during the Class Period.

---

[3] Judge Denlow is an experienced mediator who has successfully facilitated the resolution of numerous complex class actions, including ERISA class actions. *Secunda Decl.*, ¶10 *& Ex. 2.*

*Settlement Agreement, Dkt. 47-1, ¶ 1.35*. In turn, the Class Period means the period between September 16, 2016, and March 31, 2024. *Id. ¶ 1.6*.

Under the Settlement Agreement, Pactiv will cause a payment to be made of $725,000 to a common settlement fund. *Id., ¶ 3.1(a)*. After accounting for any Attorneys' Fees and Expenses, Administrative Costs, and Class Representative Case Contribution Awards approved by the Court, the Distributable Settlement Amount will be distributed to eligible Settlement Class Members. *Id., ¶¶ 1.2, 3.2(a)*.

The Plan of Allocation *(Dkt. 47-2, Ex. C)* has been preliminarily approved by the Court. *Dkt. 50, ¶ 2*. Class Counsel has retained Analytics Consulting LLC ("Analytics") as the Settlement Administrator to calculate the amounts payable to Settlement Class Members. *Settlement Agreement, ¶¶ 1.33, 2.9*. Under the Plan of Allocation, "[p]ayments to Settlement Class Members shall be calculated by the Settlement Administrator as follows: [e]ach quarter with a positive end-of-quarter balance during the Class Period ("Eligible Quarters") of each Settlement Class Member is identified; [t]he number of quarters identified in step 1 are summed together for each Settlement Class Member to determine the Settlement Class Member's Eligible Quarters; [f]or each Settlement Class Member, the Settlement Class Member's Eligible Quarters calculated in step 2 is divided by the sum of the Eligible Quarters for all Settlement Class Members for the Class Period; [e]ach Settlement Class Member will receive the fraction of the total Distributable Settlement Amount which is calculated in step 3; and [f]or purposes of these calculations, a zero should be included for any quarter during which the Settlement Class Member had no account balance, or did not participate in the Plan, at the quarter-end." *See Plan of Allocation ¶* 4.2.[4] No Former Participant (meaning a participant who no

---

[4] Under no circumstances will any monies revert to Defendants. Any checks that are uncashed will be delivered to the Plan and deposited into the forfeiture account. Dkt. 47-1, § 3.4.

longer has a positive balance in their Plan account at the time of distribution) whose payment pursuant to the Plan of Allocation would otherwise be less than twenty-five dollars, shall receive any payment from the Distributable amount. *Id.* ¶ 4.3.

### D.    Release of Claims

In exchange for the foregoing relief, the Settlement Class will release Defendants and affiliated persons and entities from "Released Claims," meaning:

> [A]ny and all actual or potential claims (including any Unknown Claims, as defined in Section 1.41), actions, causes of action, demands, rights, obligations, damages, and liabilities (including claims for attorneys' fees, expenses, or costs), whether arising under federal, state, or local law, whether by statute, contract, tort, equity, or otherwise, whether brought in an individual or representative capacity, whether known or unknown, suspected or unsuspected, for monetary, injunctive, equitable, and any other relief (collectively "Claims") against the Defendant Released Parties and Defendants' Counsel through the date the Court enters the Final Approval Order that were asserted in the Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, occurrences or the conduct alleged or asserted in the Action or could have been alleged or asserted in the Action, whether or not pleaded in the Amended Complaint; or that arise out of, relate to, are based on, or have any connection with: (1) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's investments, investment options, or service providers, including without limitation, its administrative and/or recordkeeping service providers, its investment advisors, its managed accounts service providers, its auditor, its trustees, and the Company in its role as service provider to the Plan; (2) the selection, nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries; (3) fees, costs, or expenses charged to, paid, or reimbursed by the Plan or Plan participants; (4) the services provided to the Plan or the cost of those services; (5) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties relating to the Plan's investments, investment options, or service providers; (6) any amounts charged to participants for participant account maintenance or recordkeeping and administrative fees; and/or (7) any assertions with respect to any fiduciaries or service providers of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing.

*Settlement Agreement, ¶ 1.30; see also id., § 5.1.*

## II.    CLASS NOTICE AND REACTION TO THE SETTLEMENT

Pursuant to the Court's Order preliminarily order approving the Settlement, Analytics, the Settlement Administrator, mailed or emailed notices to each of the 33,870 Class Members identified by the Plan's recordkeeper and confirmed by Analytics by cross referencing the U.S. Postal Service National Change of Address database (the "Class List"). *See Mitchell Decl. ¶¶ 7-9.*

Analytics emailed the notice to Class Members who had an email address provided in the Class List. *Id. ¶ 8.* There were 1,026 Class Members in the Class List who did not have an email address available. *Id.* Analytics therefore mailed the Settlement Notice by first-lass U.S. Mail to the 1,026 Class Members without an email address. *Id.* Analytics also mailed the notice via first class U.S. mail to 2,855 Class Members who were issued a Notice via email and had their email bounce. *Id. ¶ 9.* In the event that any Notices that were sent via U.S. mail were returned, Analytics re-mailed the Notice to any forwarding address that was provided and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶ 11.* As a result, the notice program was highly effective. Out of approximately 33,870 Notices of Settlement issued to Class Members, only 223 (approximately 0.7%) were ultimately undeliverable despite these efforts. *Id. ¶ 12.*

If any Class Members desired further information, Analytics established a Settlement Website at www.401kerisasettlement.com. *Id. ¶ 13.*[5] Analytics also created and maintained a toll-

---

[5] Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including, among other things, the Settlement Agreement, Settlement Notice, Complaint, and the Court's Preliminary Approval Order; (4) contact information for Class Counsel and the Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics *Mitchell Decl. ¶ 14.*

free telephone support line (1-855-688-9518) as a resource for Class Members seeking additional information. *Id. ¶ 14.* This telephone number was referenced in the Notice, and also appears on the Settlement Website. *Id.*

The deadline to submit objections to the Settlement was August 16, 2024. *See Dkt. 50, ¶ 14.* No objections were received from Class Members. *See Mitchell Decl. ¶ 15.* On May 23, 2024, Defendants caused the Settlement Administrator to send the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the appropriate federal and state officials. *See Settlement Agreement, ¶ 2.10; Dkt. 58.* To the parties' knowledge, no objections were received in response to the CAFA notices.

## III.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

As required under ERISA, Defendants retained an Independent Fiduciary, Fiduciary Counselors, LLC ("Fiduciary Counselors"), to review and authorize the Settlement on behalf of the Plan. *See Settlement Agreement, ¶ 2.4*; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary issued its preliminary report on August 23, 2024.

After reviewing the Settlement and numerous case documents, interviewing counsel for each of the parties, the Independent Fiduciary affirmed, among other things, that: (1) "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone," *Secunda Decl. in Support of Final Approval of Settlement, Ex. 1, at 2;* (2) "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been

agreed to by unrelated parties under similar circumstances," *id.*, and (3) "[t]he transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest." *Id.* Accordingly, the Independent Fiduciary "determined that Class Counsel obtained a favorable agreement from Defendants in light of the challenges in proving the underlying claims and damages." *Id.*

## **ARGUMENT**

### I.     **LEGAL STANDARD**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. "[T]he law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). A court may approve a settlement only if it determines after a hearing that the proposed settlement is fair, reasonable, and adequate. *Eubank v. Pella Corp.*, 2019 WL 1227832, at *2 (N.D. Ill. Mar. 15, 2019).

Federal Rule of Civil Procedure 23, as amended (effective December 2018), identifies four factors considered in making such determination: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors overlap significantly with the more detailed list of factors that courts in this Circuit have typically used for purposes of reviewing a proposed class action settlement (the "*Isby* factors"): "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Because these principles "subsume

most of the factors listed in Rule 23(e)(2)," *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019), they are considered together. As discussed below, both the factors in Rule 23(e)(2) and the *Isby* factors overwhelmingly favor approval of the Settlement.

## II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.     The Class Representatives and Class Counsel Have Adequately Represented the Class

First, the Class Representatives and Class Counsel have adequately represented the interests of the Class. *See* Fed. R. Civ. P. 23(e)(2)(A). The named Plaintiff agreed to perform his duties as the class representative, and he has fulfilled those duties throughout the course of the litigation. *See Dkt. 48, ¶¶ 2–3*. Class Counsel are also adequate, with extensive experience in ERISA litigation, *see Dkt. 47, ¶¶ 12–27*, and have skillfully represented the Class by obtaining substantial relief in the incipiency of litigation. This factor supports final approval.

### B.     Settlement Is the Product of Arm's-Length Negotiations Between Experienced, Capable Counsel

Next, courts consider whether the proposal was negotiated at arm's length and review the circumstances surrounding the negotiations, including the stage of the proceedings and the amount of discovery completed at the time of settlement. *See* Fed. R. Civ. P. 23(e)(2)(B); *Isby*, 75 F.3d at 1199. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). That is exactly the situation here: The settlement negotiations took place in the context of an arm's length mediation session before a highly-regarded and impartial mediator. *See Dkt. 47, ¶ 10 & Ex. 2.*

Although the case settled in its incipiency, the record reflects that "enough discovery has taken place to ensure 'effective representation' of the settlement class." *See Am. Int'l Group, Inc.,* 2012 WL 651727, at *9 (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011)). Relevant here: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiff's claims prior to commencing the action, *Dkt. 47, ¶ 8*; (2) the parties' legal positions were staked out in connection with a motion to dismiss which Plaintiff defeated, *id., ¶ 9*; and (3) Class Counsel had the necessary experience and qualifications to evaluate the parties' legal positions. *Id. ¶¶ 12–27.* This gave the parties a clear view of the facts and law, and the strengths and weaknesses of the case. Under these circumstances, it was appropriate for the parties to explore an early settlement.[6]

Moreover, Class Counsel and Defendants' counsel (Vedder Price P.C.) are knowledgeable and experienced in complex ERISA class actions such as this, and were assisted in their negotiations by Judge Denlow, an experienced, independent mediator. *See Dkt. 47, ¶ 10 & Exh. 2.* After separately interviewing Class Counsel and Defendants' counsel, the Independent Fiduciary, Fiduciary Counselors, concluded, "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances." *See Secunda Decl. in Support of Final Approval, Ex. 1.* These factors also support final approval.

---

[6] Courts within this Circuit have approved settlements at similar stages of proceedings. *See, e.g., Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (noting that, "although formal discovery had not commenced, [plaintiffs] had access to extensive public documents," and settlement was reached "after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" before an experienced mediator); *Dolins v. Cont'l Cas. Co.*, No. 1:16-cv-08898, Dkt. 133, at *5 (N.D. Ill. Sept. 20, 2018) ("The negotiations were supported by a robust investigation before commencement of the Lawsuit; the production and review of confidential documents … and extensive legal and factual research on the issues in the case."); *Schulte*, 805 F. Supp. 2d at 587.

## C. The Settlement Provides Substantial Monetary Relief to the Class

The third Rule 23 factor considers whether "the relief provided to the class is adequate" in light of "the costs, risks, and delay" of further litigation. *See* Fed. R. Civ. P. 23(e)(2)(C). The product of these serious and informed negotiations is a Settlement that provides significant benefits to the class. For the reasons that follow, these factors favor final approval.

The negotiated relief represents a significant portion of the alleged losses sustained by the Plan. For purposes of mediation, and based on Plaintiff's estimates, the Gross Settlement Amount of $725,000 represents based on Plaintiff's estimates approximately represents approximately 22.3% of the total estimated losses ($3.25 million) demanded from Defendants at the start of mediation. *Dkt. 47, ¶ 4.* This is on par with numerous other ERISA class action settlements that have been approved across the country.[7] *See In re Household Int'l, Inc. ERISA Litig.,* 2004 WL 7329911, at *4 (N.D. Ill. Nov. 22, 2004) (finding the monetary relief was "fair, reasonable, and adequate" where "[t]he Settlement amount is within the range of settlement values obtained in similar cases and is within the range of reasonable settlements that would have been appropriate in this case"); *Schulte,* 805 F. Supp. 2d at 583–84 (approving 10% recovery and collecting cases approving between 5.35% and 25.5% of a class's maximum potential recovery).

---

[7] *See, e.g., Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n,* No. 17-cv-00563, Dkt. 211 (May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, Dkt. 32 at 12 (May 6, 2019), *approved* Dkt. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (25% of estimated losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Finally, even if Plaintiff prevailed on liability, issues regarding loss-causation would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (determination of investment losses in breach of fiduciary duty cases is "difficult"). In the absence of a settlement, Plaintiff would have faced significant litigation risks. At the time the parties reached a settlement, expensive and time-consuming discovery loomed. After discovery, there was a risk that the Court might have dismissed the claims on summary judgment. Assuming the case proceeded to trial, the Defendants still might have prevailed.[8] Finally, even if Plaintiff prevailed at trial on liability, issues would have remained regarding proof of loss and calculation of damages.[9]

There is little doubt that continuing the litigation would have resulted in complex and costly proceedings, which would have significantly delayed relief to the Class, and might have resulted in no relief at all.[10] ERISA cases such as this can extend up to a decade before final resolution, sometimes going through multiple appeals.[11] The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See, e.g., Schulte*, 805 F. Supp. 2d at 586. Accordingly, it is no surprise that the Independent Fiduciary concluded that, "[t]he

---

[8] *See, e.g., Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011).

[9] *See, e.g., Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134–35 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) (rejecting the plaintiffs' proffered damages calculation).

[10] *See Schulte*, 805 F. Supp. 2d at 582–83; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *4 (S.D. Ill. Dec. 16, 2018) ("[A]bsent this proposed resolution and considering the strong likelihood of post-trial motions and appeals, the parties were unlikely to achieve a final disposition any time soon.").

[11] *See, e.g., Spano v. Boeing Co.*, 3:06-cv-00743, Dkt. 588 (N.D. Ill. Mar. 31, 2016) (9 years after filing); *Abbott v. Lockheed Martin Corp.*, 3:06-cv-00701, Dkt. 526 (S.D. Ill. July 20, 2015) (8.5 years after filing).

settlement terms, including the scope of the release of claims; the amount of cash received by the plan; the proposed attorney's fee award of one third of the Settlement; and any other sums to be paid from the recoveries, are reasonable in light of the plan's likelihood of full recovery, the value of claims foregone and the risks and costs of litigation." *Secunda Decl.in Support of Final Approval, Ex. 1.*

### D.      The Settlement Proceeds Will Be Distributed Equitably and Efficiently

The Settlement also outlines an equitable and effective method of distribution. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). As noted above with the preliminary approval of the Plan of Allocation, *Dkt. 47-1, Ex. C,* this Settlement is consistent with numerous other ERISA settlements that have received court approval. This method of distribution is both effective and efficient. This Court should, therefore, conclude that "the Settlement Agreement provides fair, reasonable and adequate relief to the class given . . . the effectiveness of the proposed method for distributing relief, which ensures that qualified Class Members with greater than *de minimis* damages receive a portion of the settlement, in rough proportion to their alleged losses, without having to file a claim." *See Allegretti v. Walgreen Co.,* 1:19-cv-05392, Dkt. 116 at *5 (N.D. Ill. Feb. 16, 2022).

### E.      The Class, Independent Fiduciary, and Counsel Support the Settlement

In light of the aforementioned factors, it is not surprising that there have been no objections to either the Settlement terms or the requested attorneys' fees, expenses, or service awards from any of the approximately 33,870 Class Members who were sent a Settlement Notice. *Mitchell Decl. ¶ 15.* The absence of any objections to the Settlement by Class Members supports the conclusion that the proposed settlement is fair, reasonable, and adequate. *See Bhattacharya,* No. 1:16-cv-07950, Dkt. 114, at *4; Lively v. Dynegy, Inc.,* 2008 WL 4657792, at *2 (S.D. Ill. Sept. 30, 2008);

*see also Williams v. Rohm & Haas Pension Plan,* 2010 WL 1490350, at *3 (S.D. Ind. Apr. 12, 2010)*, aff'd,* 658 F.3d 629 (7th Cir. 2011).

The Independent Fiduciary's approval and authorization of the settlement of Released Claims on behalf of the Plan further supports the Settlement. *Secunda Decl. in Support of Final Approval, Ex. 1 (Independent Fiduciary Report).* In authorizing the Settlement, the Independent Fiduciary that "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Id.* at 2.

Finally, it is Class Counsel's opinion that the proposed Settlement is fair and reasonable. *Secunda Decl. in Support of Final Approval, ¶ 2.* This *Isby* factor supports final approval of the Settlement. *Isby,* 75 F.3d at 1199.

## III. THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE

The class notice program also was reasonable and satisfied the requirements of Rule 23 and due process. The "best notice" practicable under the circumstances includes "individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B.) That is precisely the type of notice that was provided here through mail and email. *See Allegretti*, 1:19-cv-05392, Dkt. 116 at *3–4 (approving a similar notice program); *Spano*, No. 3:06-cv-00743, Dkt. 588 at *3 (same); *Nolte v. Cigna Corp.*, No. 2:07-cv-02046, Dkt. 412 at *3 (C.D. Ill. Oct. 15, 2013) (same).

As noted above, the Settlement Administrator sent the Court-approved notice to Class Members via first-class U.S. Mail and email. *See supra* at 6-7. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Further, the record

14

reflects that approximately 99.3% of Notices of Settlement sent to Class Members were successfully delivered. *See Mitchell Decl.* ¶ 11. This confirms the effectiveness of the notice program in this case. *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *7 (N.D. Ill. Mar. 25, 2022). In addition, the notices were accessible to all class members online via the Settlement Website.

Finally, the content of the notices also was reasonable. These notices were previously approved by the Court, *see Dkt. 50, ¶ 6*, and are more than sufficient to meet the Rule 23 standard. *See, e.g., Allegretti,* 1:19-cv-05392, Dkt. 116 at *4. No Class Member has claimed that the notices were deficient, and to the extent they had any questions, they could review the Settlement Website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel. Indeed, Class Counsel spoke to numerous former and current Class Members about the Settlement by phone and directed them to the toll-free telephone line for additional information. *Secunda Decl. in Support of Final Approval, ¶ 6.*

## IV. THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class for settlement purposes. *Dkt. 50, ¶ 3.* In support of preliminary approval, Plaintiff previously established that: (1) the class is numerous; (2) common issues pertain to all class members; (3) Plaintiff's claims are typical of other class members' claims; (4) Plaintiff is an adequate class representative; (5) Class Counsel are experienced and competent; (6) class certification is appropriate under Rule 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is also appropriate under Rule 23(b)(1)(B) because any individual adjudication would be dispositive of other class members' interests. *Dkt. 46* at 13-16. Nothing has changed since the

Court preliminarily certified the Settlement Class. Accordingly, the Court should reaffirm its certification of the Class.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the settlement and enter the accompanying proposed Final Approval Order, attached as **Exhibit 1** to the Motion.

Dated this 23rd day of August, 2024   Respectfully submitted,

**WALCHESKE & LUZI, LLC**

*/s/Paul M. Secunda*
Paul M. Secunda
125 South Wacker Drive, Suite 300
Chicago, Illinois 60606
Telephone: (224) 698-2630
Facsimile: (262) 565-6469
psecunda@walcheskeluzi.com

ATTORNEYS FOR PLAINTIFF and
SETTLEMENT CLASS

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_**s/Paul M. Secunda**_
Paul M. Secunda